FILED

2004 MAR -2  P 12: 37

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| PAT SNYDER and ALEXIS DAVIES | : | CIVIL ACTION NO. |
| | : | 302CV01538 (AHN) |
| | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| VS. | : | |
| | : | |
| RONALD PUGLIESE and | : | **FEBRUARY 26, 2004** |
| PETER BOSCO | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS
<u>OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT</u>**

The undersigned Defendants, Naugatuck Police Officers Ronald

Pugliese and Peter Bosco, who have been sued in their individual capacities

only, respectfully move this Court to enter judgment in their favor as to all

allegations as set forth in the Plaintiffs, Pat Snyder and Alexis Davies' one-

count Complaint dated August 28, 2002.  For the reasons set forth below, the

Defendants' motion should be granted.

## I. **FACTUAL BACKGROUND**

By way of a one-count Complaint dated August 28, 2002 the Plaintiffs, Pat Snyder and Alexis Davies have brought a federal lawsuit based primarily upon 42 U.S.C. Section 1983 claiming a violation of their constitutional rights pursuant to the equal protection clause of the Fourteenth Amendment to the United States Constitution. There are no facts alleged in the Complaint which set forth a reason why the Plaintiffs consider the Defendants state actors for purposes of a federal Fourteenth Amendment claim. There are also vague references to violations of the constitution, statutes, laws, ordinances, rules, regulations, customs and usages of the State of Connecticut and Town and Borough of Naugatuck. No particular municipal ordinance or state statute is set forth as having been violated. Paragraphs 13 and 14 of the Complaint, when read together, appear to insufficiently allege intentional infliction of emotional distress pursuant to a state common law claim.

2

## II.  **LEGAL ARGUMENT**

### A.  **Standard of Review**

Summary judgment should be granted if "there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." <u>*Celotex Corporation v. Catrett*</u>, *477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)*. Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id. at 327, 106 S.Ct. at 2555*.

A fact is deemed material if it might affect the outcome of the lawsuit. <u>*Anderson v. Liberty Lobby*</u>, *377 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)*. Further, a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The existence of a "scintilla of evidence" in support of the Plaintiffs' position is insufficient to overcome a motion for summary judgment. *Id. at 252, 106 S.Ct. at 2512*. In

3

ruling on a motion for summary judgment the judge's inquiry should be "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id*. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

To the extent that this motion also challenges the sufficiency of allegations of portions of the Complaint, the Court may treat this motion as made under Federal Rule of Civil Procedure 12(b)(6). *See 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 3d §2722, at 368 (1998 and Supp. 2003).*

**The Plaintiffs' Constitutional Claims Under The Fourteenth Amendment To The United States Constitution Fail To State A Claim Upon Which Relief Can Be Granted. 42 U.S.C. 1983 Does Not Create Substantive Rights Standing On Its Own. A Fourteenth Amendment Claim Can Only Be Brought Against The State, Not As Against Individuals With No Claimed Symbiotic Relationship With The State.**

It is well established that 42 U.S.C. 1983 does not create substantive rights, but merely provides a remedy for violations of rights created

4

elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689 (1979);

*Chapman v. Houston Welfare Rights Organization*, 411 U.S. 600, 618, 99

S.Ct. 1905 (1979). The statute does not provide for substantive rights at all,

*Huebschen v. Department of Health and Social Services*, 716. F.2d 1167,

1170 (7th Cir. 1983); it merely provides a method for vindicating federal rights

conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 811

(1994). Thus, to maintain an action under 42 U.S.C. §1983, the Plaintiff must

point to a cognizable federal right. *Ruggiero v. Krzeminski*, 928 F.2d 558,

562 (2d Cir. 1991); *Ivimey v. Watertown*, 30 Conn.App. 742, 753, *cert.*

*denied*, 226 Conn. 902 (1993).

For the reasons set forth below, those portions of the Plaintiffs, Pat

Snyder and Alexis Davies' equal protection civil rights claims alleging a cause

of action under the Fourteenth Amendment fail to state a claim upon which

relief can be granted.

The Plaintiffs, Pat Snyder and Alexis Davies, both white females, *(see*

*Exhibits 1 and 2 each at Paragraph 3)* vaguely claim deprivation of their right

to equal protection of the laws in violation of the Fourteenth Amendment to

5

the United States Constitution.  The Plaintiffs' Complaint does not claim gender discrimination nor that they are members of a protected class.

Thus, in order for the Plaintiffs to establish a prima facie case of discrimination under the equal protection clause, they must demonstrate that (A) they are similarly situated to a member of an alleged class, and (B) they were treated differently from members of the class.  *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993); see generally:  *Tunnell v. United Technologies Corporation, Pratt & Whitney Division*, 54 F.Supp.3d 136 (United States District Court D. Conn. 1999).

The Plaintiffs must also demonstrate that the Defendants, Peter Bosco and Ronald Pugliese, acted with discriminatory intent.  *McNabola, at 529.*

A complaint alleging a Section 1983 claim must allege all elements of the constitutional or statutory claim upon which the Section 1983 claim is based.  One essential element of a claim under the equal protection clause of the Fourteenth Amendment is discriminatory intent.  See *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976). Consequently, discriminatory intent is an essential element of a Section 1983

claim based on an equal protection violation. *See Silver v. City University of New York*, 947 F.2d 1021, 1022 (2d Cir. 1991); *Knight v. Nassau County Civil Service Commission*, 649 F.2d 157, 162 (2d Cir. 1981).

In this particular case the Plaintiffs' Complaint only alleges <u>intent</u> in the (second) Paragraph 13 which make reference to the allegedly disparate treatment of the tenant, John Lepeska, only. It is unclear why this alleged disparity of treatment rises to the level of a violation of constitutionally protected rights. The deposition testimony of both Plaintiffs suggest that the tenant, John Lepeska, was not in fact treated in a more favorable fashion under similar circumstances. *(See Rule 9(c) Statement at Paragraphs 57, 59, 61, 83 and 84.)*

The equal protection clause requires <u>state actors</u> to treat similarly situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). However, "to prove an equal protection violation, claimants must prove purposeful discrimination, directed at an <u>identifiable or suspect class</u>." *Id*. A claimant must demonstrate intentional discrimination against him/her because of his/her membership in a particular class, <u>not merely that he/she</u>

7

reasonable jury could find that the Plaintiffs were discriminated against because of their membership in any type of recognized protected or unprotected class. *(See deposition transcripts of Plaintiff, Pat Snyder dated September 12, 2003 and September 15, 2003 attached hereto as Exhibits 3 and 4. See also deposition transcript of Plaintiff, Alexis Davies, dated September 12, 2003, attached hereto as Exhibit 5.)*

The equal protection clause directs state actors to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).* To prove an equal protection violation, claimants must prove purposeful discrimination, *see McClesky v. Kemp, 481 U.S. 279, 292 (1987),* directed at an identifiable or suspect class. *See Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 447-58 (1988).*

For purposes of equal protection analysis, the relevant classifications are those among persons similarly situated. *Plyler v. Doe, 457 U.S. 202, 216 (1982).* As a result, equal protection analysis often begins with identifying the similarly situated person. *Id.*

It is apparent from reading various Fourteenth Amendment equal

9

protection cases that the groups that are "similarly situated" are typically based on classifications as set forth in a statute or ordinance. *See generally Plyler, 457 U.S. at 216; USA v. Pollard, No. 02-3018 (3rd Cir. 4/17/03).*

In this instant matter the Plaintiffs have not alleged that a specific state statute or municipal ordinance created a protected class of similarly situated individuals. Thus, no analysis of a legislatively created "similarly situated" group is possible. In this case the Plaintiffs, Pat Snyder and Alexis Davies are merely claiming that their Scott Street tenants or possibly a neighbor were similarly situated to her without further reference to their ages, sex or any other potential form of classification.

It appears that the gist of the Plaintiffs' claims are that the named Defendants "treated the Plaintiffs less favorably than other similarly situated persons residing on Scott Street, in particular they have treated the Plaintiffs more harshly than they have treated the tenants of the Plaintiff Snyder. *See Plaintiffs' Complaint at Paragraph 13 (first Paragraph 13.).* This is exactly the type of Complaint based upon individual treatment that is not recognized as a valid Fourteenth Amendment claim based upon membership in a particular

10

class. *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir. 1983).

In this matter the Plaintiffs' deposition testimony outlined above merely point to a general complaint that they were not treated fairly as individuals. **The Defendants Are Sued In Their Individual Capacities Only.**

The Complaint as alleged is also insufficient in that the Fourteenth Amendment to the United States Constitution declares that no <u>state</u> shall deny to any person within its jurisdiction the equal protection of the laws. *U.S. Constitution Amendment XIV Section 1.*

This claim is only directed toward the named Defendants in their individual capacities. *(See Complaint at Paragraph 4.)*

A private party can be deemed to be a state actor: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of

11

enforcing a right of a private individual. *DeBauche v. Trami*, 1919 F.3d 499,

507 (4th Cir. 1999), quoting *Andrews v. Federal Home Loan Bank of Atlanta*,

998 F.2d 214, 217 (4th Cir. 1993).

The Plaintiffs' Complaint does not allege any facts which fall into these

four categories, thus transforming the Defendants sued as private parties into

state actors.

"It is well-established that a private party's conduct may be held

attributable to the state and subject to a Section 1983 liability when a

'symbiotic relationship' exists between the acting party and the state." *Id*. at

147, citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961).

"To consider a private employer a state actor for Section 1983 purposes, a

plaintiff 'must allege, at the very least, that there was a mutual understanding,

or a meeting of the minds, between the private party and the state actor.'"

*Pendleton v. St. Louis County*, 178 F.3d 1007, 1001 (8th Cir. 1999), quoting

*Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

No such mutual understanding or meeting of the minds is alleged in

12

The United States Supreme Court has consistently held that "where the impetus for the discrimination is private, the state must have significantly involved itself with the invidious discriminations." *Reitman v. Mulkey*, 387 *U.S. 369, 380 (1967)*. In this case the Plaintiffs chose to sue the Defendants in their individual capacities only which suggests that the Plaintiffs consider that the impetus for discrimination was private.

In this case it appears that the Plaintiffs may be vaguely claiming that a facially neutral police policy has been applied in a discriminatory manner. *See Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)*, or that a facially neutral policy has had an adverse effect and that it was motivated by animus. *See Village of Arlington Heights v. Metropolitan Housing Development Corp, 429 U.S. 252, 264-65 (1977); Johnson v. Wing, 178 F.3d 611, 615 (2d Cir. 1999)*. Yet the Complaint does not set forth the elements necessary to prevail under either type of analysis. Nor does this lawsuit include a claim against the municipality or its policy makers.

When pleading this type of a violation of the equal protection clause, it is necessary to allege the existence of a similarly situated group which was

14

treated differently.  For example, if a plaintiff seeks to prove selective prosecution on the basis of race, he must show that similarly situated individuals of a different race were not prosecuted.  *United States v. Armstrong*, 517 U.S. 456, 467 (1996).  In this case the Plaintiffs have not alleged or shown that similarly situated individuals were treated differently under similar circumstances.

The role of this Court when deciding the validity of a Section 1983 action based upon an equal protection claim is not to evaluate whether the police action in question was the appropriate response under the circumstances, but to determine whether what was done violated the equal protection clause.  See *Brown v. City of Oneonta*, No. 98-9375 (2d Cir. 1999).

In this matter there are no facts alleged or demonstrated which tend to prove that a decision not to arrest John Lepeska on November 26, 2001 violated the Plaintiffs' equal protection rights.

As a matter of law a facially neutral policy violates the equal protection clause only where its adverse effect on a suspect class reflects purposeful discrimination.  See e.g. *Personnel Administrator v. Feeney*, 442 U.S. 256,

15

272-74 (1979); *Orange Lakes Assoc. Inc. v. Kirkpatrick*, 21 F.3d 1214, 1226

(2d Cir. 1994). This instant Complaint sets forth no further specific reference

to any direct violation of a municipal or state policy, town ordinance or other

state statute which violated clearly established rights at any date.

In this instant matter the Plaintiffs do not claim membership in a

protected class. A reading of the Complaint in a light most favorable to the

Plaintiffs makes no reference to age, gender, race, national origins or other

protected status.

Assuming for the sake of argument that the Plaintiffs have sufficiently

pled that they are members of a class, they cannot prevail upon their claim

that specific similarly situated individuals were treated by the named

Defendants in a manner that was materially different. *(See Complaint at*

*Paragraph 13, second Paragraph 13. See also Defendants' Rule 9 (c)*

*Statement of Undisputed Material Facts in Support of Defendants' Motion for*

*Summary Judgment at Paragraphs 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33,*

*34, 35, 36, 37, 38, 39, 40, 41, 42, 54, 55, 56, 57, 58, 59, 60, 61, 82, 83, and*

*84.)*

16

Similarly, the Plaintiffs have improperly made conclusory references to possible actions by the Defendants and "other members of their department."

A Section 1983 claim must contain specific allegations of fact which indicate a deprivation of constitutional rights, allegations which are nothing more than broad simple, and conclusory statements are insufficient to state a claim under Section 1983. *Alfero Motors Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). In applying this standard, the Second Circuit has dismissed claims against individual defendants where the complaint was devoid of allegations that an individual defendant was directly and personally responsible for the purportedly unlawful conduct. *Id*. at 886. In this case the pleadings are unclear as to (1) the nature of the unlawful and unconstitutional conduct (beyond facts alleged to have occurred on November 26, 2001); (2) the theory of liability under which the plaintiff seeks to hold the named defendants (allegedly acting in their individual capacities) liable for unspecified acts of "other members of their department." *(See Complaint at Paragraph 13.)*

The Plaintiff, Pat Snyder's Complaints directed toward both

17

Defendants in their individual capacities are outlined in the attached Rule 9(c)
statements as follows:  Paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23,
24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 38, 40, 41, 42, 43, 48, and 53.  The
Plaintiff, Alexis Davies' complaints directed toward both Defendants in their
individual capacities are outline in the attached 9(c) Statement as follows:
Paragraphs 65, 66, 67, 68, 69, 70, 77, 80, 82, 83, 85, 86, 87, 88, 89, and 91.

### Qualified Immunity

Qualified immunity  serves as a defense against personal liability for
local officials who perform administrative and enforcement functions.
Qualified immunity is afforded to a policeman so he is not forced to choose
"between being charged with dereliction of duty if he does not arrest when he
has probable cause and being mulcted in damages if he does." *Pierson v.
Ray, 386 U.S. 547, 555 (1967)*.

The better approach to resolving cases in which the defense of
qualified immunity is raised is to determine first whether the plaintiff has
alleged a deprivation of a constitutional right at all.  *County of Sacramento v.
Lewis, 118 S.Ct. 1708, 1714 n.5 (1998)*.  Recently, the United States

18

Supreme Court has noted that, "Thus, a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so proceed to determine whether the right was clearly established at the time of the alleged violation." _Conn v. Gabbert_, 119 S.Ct. 1292, 1295 (1999).

In this case the Plaintiffs have failed to properly allege the deprivation of an actual constitutional right. _(See Complaint at Paragraphs 4 through 14.)_

Police officers are immune from liability for money damages in suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." _Harlow v. Fitzgerald_, 457 U.S. 800, 818 (1982). The Second Circuit has explained that "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." _Lennon v. Miller_, 66 F.3d 416, 420 (2d Cir. 1995) (quoting _Anderson v. Creighton_, 483 U.S. 635, 641 (1987); see

19

also _Weyant v. Okst_, 101 F.3d 845, 857 (2nd Cir. 1996) ("[P]ublic officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.")  A police officer's actions are objectively unreasonable, and therefore are not entitled to immunity, when "no officer of reasonable competence could have made the same choice in similar circumstances." _Lennon_, 66 F.3d at 420-21 (citing _Malley v. Briggs_, 475 U.S. 335, 341 (1986).

In this instant matter there is no allegation that either of the named Defendant police officers ever arrested either Plaintiff.  Similarly, there are no facts alleged which establish any action or inaction on the part of the Defendants which violate clearly established rights.  The basic gist of the claim appears to be that the Plaintiffs were treated "more harshly" than other individuals including a Scott Street tenant named John Lepeska and others not named in the Complaint.  _(See Defendants' Rule 9(c) Statement at Paragraphs 43 and 67.)_

In this case it was reasonable for the police officers to decline arresting

20

John Lepeska on November 26, 2001 whereas (1) he did not commit any recognizable crime in their presence on that date, (see *Defendants' Rule 9(c) Statement at Paragraphs 43, 44, 47, 48, 51, 52 and 53)*, (2) the tenant, John Lepeska, did not threaten to hit or take a swing at either of the Plaintiffs, *(see Defendants' Rule 9(c) Statement at Paragraph 80)* and (3) neither of the Plaintiffs specifically requested that John Lepeska be arrested on November 26, 2001 *(see Defendants' Rule 9(c) Statement at Paragraph 81.)*

This claim that the tenant, John Lepeska, was treated in a disparate fashion (more favorable) is like the case of *Pierson v. Ray* cited above because the Plaintiffs seek to force liability upon the Defendants in a situation in which they are charged with the equivalent of dereliction of duty (for failure to arrest John Lepeska) and being mulcted in damages if they did arrest him. *(See generally, Pierson v. Ray, 386 U.S. 547, 555 (1967).)* No facts appear to be alleged or shown which would justify the arrest of John Lepeska on November 26, 2001.

### Absolute Immunity

Local officials who perform judicial or legislative functions or conduct

21

related functions are entitled to an absolute immunity defense in a personal capacity Section 18983 lawsuit. *Suing and Defending Cities For Federal and Constitutional Violations* by David Gelfand, Lexis Publishing §6:03. Absolute immunity once established serves as more than a mere defense to personal liability damages it actually bars such suits. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1981); *Butz v. Economou*, 438 U.S. 478 (1978). Absolute immunity has been extended to police officers performing functions that require the exercise of prosecutorial discretion. *See Jean v. Collins*, 155 F.3d 701, 705 n.1 (4th Cir. 1998). *See also Clynch v. Chapman*, No. 3:01 cv 1685 (JBA) ruling on Motion for Summary Judgment dated September 30, 2003 by the Honorable Janet Bond Arterton, U.S.D.J. (see Exhibit 6 attached hereto at page 10, footnote 6.)

In this case the decisions by the named Defendant municipal police officers not to arrest the tenant, John Lepeska, on November 26, 2001 or to otherwise seek or not seek prosecution against other various Scott Street residents required the exercise of prosecutional discretion. Thus, to the extent that the Plaintiffs' seek liability against the named Defendants based

22

on their decision whether or not to prosecute others at various unspecified date(s) or places should be barred by the absolute immunity defense.

### State Law Claims

The Plaintiffs, Pat Snyder and Alexis Davies, have not set forth any specific claim of violation of state law except a common law claim of infliction of emotional distress.  Since no allegations of negligence are set forth anywhere in the Complaint, it appears that only intentional infliction of emotional distress is claimed.

In this matter the Court should look to United States Supreme Court precedent when construing the related provisions in the Connecticut State Constitution set forth in the Plaintiffs' Complaint, if any, whereas there is no claim alleged in this matter that the protection afforded to Connecticut citizens go beyond those provided by the Federal Constitution nor is there a request to analyze the state constitutional breadth of a particular ordinance or statute.  *See generally,* <u>*Leydon v. Town of Greenwich*</u>, *257 Conn. 318, 777 A.2d 552 (2001).*

The Plaintiffs, Pat Snyder and Alexis Davies, have not set forth any

23

facts in their Complaint which are particular to claims of violations of the

Constitution of Connecticut.

Similarly, there is no claim that a particular state or municipal statute or

ordinance has been violated by the Defendants while acting under color of

law (in their individual capacities).

**The Plaintiffs Have Failed To Allege Or Establish That The Defendants Intended To Inflict Emotional Distress, That Their Conduct Was Extremely Outrageous, Or That The Plaintiffs Suffered Severe Emotional Distress.**

Before the Plaintiffs, Pat Snyder and Alexis Davies, can recover for

intentional infliction of emotional distress, they must allege and establish the

following four elements:

> (1) that defendants intended to inflict emotional
> distress or that they knew or should have known
> that emotional distress was a likely result of their
> conduct; (2) the conduct was extreme and
> outrageous; (3) the defendants' conduct was the
> cause of the plaintiff's distress; and (4) the
> plaintiff suffered severe emotional distress.
> *Drew v. K-Mart Corp.,* 37 Conn.App. 239, 251
> *(1995).*

To establish liability for this tort, the Plaintiffs, Pat Snyder and Alexis

Davies, must prove that the Defendants' exceeded all bounds usually

24

tolerated by decent society and that their actions were "especially calculated to cause, and did cause mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266-267 (1991); *Petyan v. Ellis*, 200 Conn. 243, 253 (1986).

> Before a claim for intentional infliction of emotional distress is submitted to a jury, the court must initially determine that the defendant's conduct may be reasonably regarded as extreme and outrageous so as to permit recovery . . . [and] only where reasonable minds may differ should the claim be submitted to a jury. *Reed v. Signode Corp.*, 652 F.Supp. 129, 137 (D. Conn. 1986).

The facts alleged in the Complaint and further described by the Plaintiffs in their depositions do not rise to the extreme and outrageous level required to permit recovery. *(See Complaint at Paragraphs 7, 8, 9, 10, 11 and 12. See Defendants' Rule 9(c) Statement at Paragraphs 14, 17, 18, 19, 28, 29, 32, 33, 34, 35, 36, 38, 39, 40, 42, 43, 48, 49, 50, 51, 65, 67, 68, 69, 70, 77, 81, 83, 85, 88, 89, and 91.).*

In Paragraph 14 of the Plaintiffs' Complaint they assert that the Defendants' conduct was as follows:

14.    "As a result, the plaintiffs suffered the fear that they

25

were outside the protection of the law, and emotional distress."

There is no specific reference to any conduct which is allegedly extreme and outrageous. A listing of the conduct which allegedly caused emotional distress can be found in the Defendants' Rule 9(c) Statement at the same paragraphs outlined in the prior paragraph of this brief.

In the absence of any type of medical or mental health treatment, the mental distress alleged by the Plaintiffs can hardly be considered of a "very serious kind." _DeLaurentis_, 220 Conn. at 267; see also _Reed_, 652 F.Supp. at 137; _Almonte v. Coca-Cola Bottling Co. of New York, Inc._, 959 F.Supp. 569, 575-76 (D. Conn. 1997). Symptoms of sleeplessness, depression and anxiety which do not require medical treatment or involve an infliction to an extraordinary degree are insufficient to defeat summary judgment. _Almonte_, 959 F.Supp. at 575-76; _Reed_, 652 F.Supp. at 137 (without medical treatment for emotional distress, the Plaintiff could not withstand summary judgment.)

Although the most recent Connecticut state court cases may not require proof of medical treatment, it is apparent that a severe emotional reaction to a specific act or acts must be alleged and established by the

26

unconstitutional action." *See Mitchum v. Foster, 407 U.S. 225, 242 (1972).* It is not the function of the federal courts to mediate personal squabbles. Personal political agendas and lawsuits based upon claims that a plaintiff might have been treated unfairly as an individual do not sustain a federal civil rights lawsuit. If it did, the burden on the judiciary would be impossible to sustain and the merits of the judicial system trivialized. Here, the Plaintiffs' claim s can only be characterized as a focused personal mission to punish the Defendant police officers on an individual basis in response to perceived individualized unfair treatment.

Thus, for all the reasons discussed above, the Defendants respectfully request that this Court end this meritless lawsuit before any further time or expense is needlessly exhausted.

THE DEFENDANTS,
Ronald Pugliese and Peter Bosco

By: _____
James P. Mooney, Esquire
Law Office of Kelly & Mooney
2452 Black Rock Turnpike
Fairfield, CT 06825-2418
(203) 373-7780
Federal Bar No.: CT 09070

29

## **CERTIFICATION**

This is to certify that on February 26, 2004 a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Dismissal or in the Alternative for Summary Judgment was mailed, postage prepaid, via first class U.S. mail, to:

Attorney John R. Williams
Attorney Timothy J. Mahoney
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, Connecticut   06510

_____
JAMES P. MOONEY, Esquire

30

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

While dismissal of the state law claims is not mandatory, *Rosado v. Wyman*, 397 U.S. 397, 403-05 (1970); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n. 7. *See also DiLaura v. Power Authority of New York*, 982 F.2d 73, 80 (2d Cir. 1992); *Baylis v. Marriott Corp.*, 843 F.2d 658, 664-65 (2d Cir. 1988); *Indep. Bankers Ass'n v. Marine Midland Bank*, 757 F.2d 453, 464 (2d Cir. 1985).

The Defendants respectfully request that this Court dismiss the Plaintiffs' state court claims, if the federal law claims are eliminated by way of this Motion to Dismiss or for Summary Judgment.

## III.  CONCLUSION

The purpose of Section 1983 and the federal court system is to serve as "guardians of the people's federal rights" and "to protect the people from

28

Plaintiffs.  In this matter the Plaintiff, Alexis Davies admits that she has

sought no medical treatment as a result of the alleged behavior of the

Defendants.  *(See deposition transcript of Alexis Davies marked as Exhibit 5*

*at page 69.)*  Alexis Davies did not miss any days from work as a result of the

incident alleged in the Complaint.  *(See deposition transcript of Alexis Davies*

*marked as Exhibit 5 at page 79.)*

The Plaintiff, Pat Snyder, by way of discovery responses does claim

medical treatment as a result of the behavior of the Defendants.  However,

no medical reports or bills substantiating this claim of medical or psychiatric

treatment has been provided by the Plaintiff by way of interrogatory and

production discovery responses.  Thus, this claim based upon state common

law should be dismissed as a matter of law.

**State Law Claims – Pendent Jurisdiction:**

Under 28 U.S.C.A. Section 1367(c)(3), "the district courts may decline

to exercise supplemental jurisdiction over a state law claim if the district court

has dismissed all claims over which it has original jurisdiction.  Pendent

jurisdiction is a doctrine of discretion, not of plaintiff's right."  *United Mine*

27