UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAT SNYDER and<br>ALEXIS DAVIES | : <br> : <br> : <br> : | |
| VS. | : <br> : | NO. 3:02CV1538 (HBF) |
| RONALD PUGLIESE and<br>PETER BOSCO | : <br> : | APRIL 4, 2004 |

**BRIEF IN OPPOSITION TO MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

    This is an action for a denial of equal protection of the laws by two officers of the Naugatuck Police Department.  The plaintiffs contend that on the evening of November 26, 2001, the defendants threatened to arrest them unless they took a bag of garbage out of a trash can on their property and delivered it to a tenant of the plaintiff Snyder.  At that same time, the tenant threw the bag of garbage at the plaintiff Davies in their presence, missing her only because she ducked, and shook his fist and screamed at both plaintiffs and threatened to blow up their house.  All of these crimes took place in the presence of the defendants, who took no action and left the area.  On other occasions the defendants and their fellow Naugatuck officers treated the tenants more favorably than the plaintiffs when obviously false complaints were made by the

1

tenants.  On one other occasion the two defendants together ordered the plaintiffs off the street and into their residences.  On another, one of the defendants entered the plaintiff Snyder's residence without her permission and without knocking, for no apparent purpose other than to threaten her.  On all such occasions the defendants were in uniform and acting in their capacities as Naugatuck police officers.  (See Plaintiffs' Local Rule 56 Statement and citations to deposition testimony therein.)

      The defendants have moved for summary judgment.  The grounds are not entirely clear.  In part, they seem to be arguing that because they are sued in their individual capacities, and because they are sworn officers of the Town of Naugatuck, they are not "state actors" within the meaning of 42 U.S.C. § 1983.  Such an argument obviously misunderstands hornbook law.  "'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.'...When determining whether a person is a state actor, the court considers 'the extent to which the actor relies on governmental assistance and benefits...; whether the actor is performing a traditional governmental function...; and whether the injury caused is aggravated in a unique way to the incidents of governmental authority.'"  <u>Storck v. Suffolk County Dept. of Social Services</u>, 62 F. Supp. 2d 927, 940-41 (E.D.N.Y. 1999).  Citing <u>National Collegiate Athletic</u>

Assn. v. Tarkanian, 488 U.S. 179, 191 (1988); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22 (1991); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 433 (2d Cir. 1995).  "[W]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties....The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995).  The defendants do not dispute – indeed, they affirmatively assert – that at the times in question they were acting in an official capacity as sworn municipal police officers.

      The defendants appear to suggest that, because they are sued in their individual capacities, the plaintiffs are not suing them as state actors.  Again, this is a misperception of the most basic aspects of a Section 1983 case.  A police officer sued for civil rights violations under Section 1983 *must* be sued in his individual capacity if individual liability is alleged.  If he is sued in his *official* capacity, the suit is not against him but against the governmental unit which employs him.  See, *e.g.*, Rodriguez v. Phillips, 66 F.3d 470 (2d Cir. 1995); Suarez Corporation Industries v. McGraw, 125 F.3d 222 (4th Cir. 1997); Biggs v. Meadows, 66 F.3d 56 (4th Cir. 1995); Moore v. City of Harriman, 218 F.3d 551 (6th Cir. 2000); Wells v. Brown, 891 F.2d 591 (6th Cir. 1989); Hill v. Shelander,

924 F.2d 1370 (7th Cir. 1991); Nix v. Norman, 879 F.2d 429 (8th Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991); Pride v. Does, 997 F.2d 712 (10th Cir. 1993); Daskalea v. District of Columbia, 227 F.3d 433 (D.C. Cir. 2000).

    The defendants assert that there is nothing in the allegations of the suit or in the evidence before the court to support a claim for denial of equal protection. Again, it is unclear what the defendants are talking about.  They refer to the fact that the plaintiffs are white females, but say no more.  They speak of a need to allege and prove intent to discriminate, but do not correlate that to the evidence which, in one particularly dramatic instance, shows that the defendants forced the plaintiffs to give a bag of literal garbage they had picked up from their own property to a tenant who at that very time was assaulting and threatening them, yet took no action whatever against that tenant.  This is an obvious disparate enforcement of the law.  Other instances of disparate treatment, less dramatic, also are testified to.

    "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000).  Citing

Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918).  Expressly endorsing the concept of equal protection for the so-called "class of one" and emphatically rejecting any idea that motivation is relevant to the equal protection analysis, the *Olech* court articulated the standard:  "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  120 S. Ct. at 1074. Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); and Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). All that a plaintiff need prove is (1) disparate treatment and (2) lack of a rational basis for the disparity.  A plaintiff must "allege[] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 564.

      Holding precisely that, this court has summarized the present state of Second Circuit equal protection law:  "Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

5

constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), *citing* Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." *Ibid.*, quoting Harlen, *supra*, at 500. *Cf.*, Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); Oneto v. Town of Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001); Carpenteria Valley Farms, Ltd. v. County of Santa Barbara, 334 F.3d 796, 802 (9th Cir. 2003).

The facts of this case, therefore, easily support an equal protection claim and do so on the basis of law clearly established prior to the date of the defendants' actions. Thus, the defendants' assertion of qualified immunity is unavailing. "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally

reasonable in light of the legal rules that were clearly established at the time it was taken." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted).

  The defendants' claim of absolute governmental immunity is unsupported by any law whatsoever, and deserves no further comment. Obviously the defendants were not acting in a judicial or quasi-judicial capacity as they so boldly assert. Many cases have discussed and applied the concept of quasi-judicial immunity in a variety of law-enforcement contexts. *E.g.*, Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698 (1st Cir. 1995) (individual members of board and board's attorney entitled to either judicial or prosecutorial immunity even for malicious and corrupt acts); Montero v. Travis, 171 F.3d 757 (2d Cir. 1999) (parole board commissioner who presided over parole revocation hearing entitled to quasi-judicial immunity); Scotto v. Almenas, 143 F.3d 105 (2d Cir. 1998) (parole officers who threatened to initiate parole revocation proceedings and signed arrest warrant were entitled to quasi-judicial immunity, but parole officer who recommended issuance of warrant was not); Hili v. Sciarrotta, 140 F.3d 210 (2d Cir. 1998) (New York state probation officers entitled to quasi-judicial immunity); Rodriguez v. Weprin, 116 F.3d 62 (2d Cir. 1997) (court clerk who allegedly delayed plaintiff's appeal was performing a judicial function and thus was immune); Young v. Selsky, 41 F.3d 47 (2d Cir.

1994) (director of Office of Special Housing and Inmate Disciplinary Programs for N. Y. Dept. of Correctional Services denied right to claim quasi-judicial immunity); Tulloch v. Coughlin, 50 F.3d 114 (2d Cir. 1995) (prison disciplinary officer -- same result); Dorman v. Higgins, 821 F.2d 133, 136-39 (2d Cir. 1987) (federal probation officer entitled to quasi-judicial immunity for actions in moving for probation revocation); Turner v. Houma Municipal Fire and Police Civil Service Board, 229 F.3d 478 (5th Cir. 2000) (municipal fire and police civil service board members not entitled to immunity); Davis v. Bayless, 70 F.3d 367 (5th Cir. 1995) (court-appointed receiver granted judicial immunity from suit after he conducted a search of plaintiff's premises for assets); O'Neal v. Mississippi Board of Nursing, 113 F.3d 62 (5th Cir. 1997) (state nursing board members who conduct adjudicatory license revocation hearings are immune); Collyer v. Darling, 98 F.3d 211 (6th Cir. 1996) (state personnel board members are absolutely immune for their adjudicative acts); Crenshaw v. Baynerd, 180 F.3d 866 (7th Cir. 1999) (members of Indiana Civil Rights Commission entitled to quasi-judicial immunity for actions dismissing a complaint); Wilson v. Kelkhoff, 86 F.3d 1438 (7th Cir. 1996) (prison review board members who revoked plaintiff's supervised release got quasi-judicial immunity, but correction department employee was not); Martin v. Hendren, 127 F.3d 720 (8th Cir. 1997) (police officer carrying out judge's order to handcuff plaintiff and remove her from courtroom was immune);

Anton v. Getty, 78 F.3d 393 (8th Cir. 1996) (parole commissioner, hearing examiner and officers charged with illegally delaying parole release were entitled to quasi-judicial immunity, but parole case manager and supervisors were not); Robinson v. Freeze, 15 F.3d 107 (8th Cir. 1994) (bailiff claimed he was acting under judge's orders - remanded for further evidence on the point); Mishler v. Clift, 191 F.3d 998 (9th Cir. 1999) (Board of Medical Examiners entitled to quasi-judicial immunity for actions respecting physician's license); Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) (sheriff and deputies allowed to claim quasi-judicial immunity for following judge's orders); Wagshal v. Foster, 28 F.3d 1249 (D.C. Cir. 1994) (mediator allowed to claim quasi-judicial immunity); DeRosa v. Bell, 24 F. Supp. 2d 252 (D. Conn. 1998) (Arterton, J.) (public health officials who summarily suspended plaintiff's day care license not entitled to quasi-judicial immunity); Poe v. Massey, 3 F. Supp. 2d 176 (D. Conn. 1998) (Chatigny, J.) (probation officer who prepared a presentencing report for the court receives quasi-judicial immunity); Gyadu v. Workers Compensation Commission, 930 F. Supp. 738 (D. Conn. 1996) (workers' compensation review board protected by quasi-judicial immunity). None even comes close to the decision whether or not to make an arrest, or whether to treat similarly-situated citizens differently, as here.

As to the plaintiffs' state law claim for the intentional infliction of emotional

9

distress, the defendants chiefly assert that the degree of emotional distress alleged by the plaintiffs is insufficient.  They admit that the plaintiff Snyder claims to have required medical treatment for her emotional distress, but assert that in the absence of bills to document that claim she must lose on summary judgment.  As to the claim of plaintiff Davies that, while not requiring medical treatment, she suffered sleeplessness and stress, the defendants assert that such injuries as a matter of law are not severe enough to warrant compensation.  This court has disagreed.  "Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not preclude proof of severe emotional distress."  Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) (Underhill, J.) (holding that "memory loss and anxiety...are sufficiently serious that a reasonable jury could find for the plaintiff").

It is not clear whether the defendants are making the usual argument that their conduct was not sufficiently "extreme and outrageous" to qualify under state law.  But, if they are, they are wrong.  Many cases have found conduct of police officers no more offensive than that of these defendants to be sufficient that a jury could consider it extreme and outrageous.  In Gilman v. Gilman, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption

10

of their dinner. In <u>McKelvie v. Cooper</u>, 190 F.3d 58 (2d Cir. 1999), the Second Circuit, applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor. In <u>Moss v. Town of East Haven</u>, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination. Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in <u>Bosco v. MacDonald</u>, 13 Conn. L. Rptr. No. 10, 312 (1995). In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor. <u>Johnson v. Teamsters Local 559</u>, 102 F.3d 21 (1st Cir. 1996). See also <u>Anderson v. Drapp</u>, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law. An allegation that a police officer had written a

11

letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment.  Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.).  The action of a police officer in sending a taunting Christmas card to a pretrial detainee at the Hartford Correctional Center was sufficiently "extreme and outrageous" to survive a motion to strike.  Johnson v. Martin, 2 Conn. Ops. 764, 1996 WL 383351, at *3 (Conn. Super. 1996) (Sheldon, J.).  See also Mejia v. City of New York, 119 F. Supp. 2d 232, 285-86 (E.D.N.Y. 2000) (racial remarks by a police officer[1]); Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir. 2001) (police officer shot plaintiff's dog).

      "The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary

---

[1] The court also held that a lower standard for outrageousness applies when the defendant is a public official, like a police officer, because misconduct by one in a position of power is by its very nature more offensive than similar misconduct by a private citizen.

judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970).  "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is

one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co.,

108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), *citing* Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

The motion for summary judgment should be denied.

                      Respectfully submitted:

                      _____
                      JOHN R. WILLIAMS (ct00215)
                      Williams and Pattis, LLC
                      51 Elm Street, Suite 409
                      New Haven, CT 06510
                      Telephone: 203.562.9931
                      Fax: 203.776.9494
                      E-Mail: jrw@johnrwilliams.com
                      Plaintiffs' Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, a copy hereof was mailed to James P. Mooney, Esq., 2452 Black Rock Turnpike, Fairfield, CT 06432.

                      _____
                      JOHN R. WILLIAMS