UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAT SNYDER and<br>ALEXIS DAVIES | :<br>:<br>: |
| VS. | :   NO. 3:02CV1538 (HBF)<br>: |
| RONALD PUGLIESE and<br>PETER BOSCO | :<br>:   APRIL 4, 2004 |

**PLAINTIFFS' LOCAL RULE 56 STATEMENT**

*I   PLAINTIFFS' RESPONSES TO DEFENDANTS' CLAIMS OF FACT*

1. Agree.

2. Disagree. (Snyder deposition, p. 33)

3. Agree.

4. Disagree. (Snyder deposition, pp. 34-35)

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree that this is one such act.

15. Agree.

16. Agree.

17. Agree.

18. Agree.

19. Agree.

20. Agree.

21. Agree.

22. Agree.

23. Agree.

24. Agree.

25. Agree.

26. Agree.

27. Agree.

28. Agree.

29. Agree.

30. Agree.

31. Agree.

32. Disagree.  (Snyder deposition, pp. 70-75)

33. Agree.

34. Agree.

35. Agree.

36. Agree.

37. Agree.

38. Agree.

39. Agree.

40. Agree.

41. Agree.

42. Agree.

43. Agree that the plaintiff Snyder testified that she believes that language of the complaint refers to the November 26, 2001, incident.

44. Agree.

45. Agree that the plaintiff Alexis Davies has the nickname "Giselle" as well as a professional name she uses in her work as a disc jockey. Disagree that the defendants have any right to refer to her by such name in this or any other pleading.

46. Agree.

47. Disagree. (Davies deposition, pp. 199-202)

48. Agree.

49. Agree.

50. Agree.

51. Agree.

52. Agree.

53. Disagree.  (Davies deposition, p. 47)

54. Agree.

55. Agree.

56. Agree.

57. Agree, except he was not arrested by the defendants.

58. Agree.

59. Agree.

60. Agree.

61. Disagree.  Defendants have no evidence to support this claim.

62. Agree.

63. Agree.

64. Agree.

65. Agree.

66. Agree.

67. Agree that she stated she so believes.

68. Agree.

69. Agree.

70. Agree that she stated she so believes.

71. Agree.

72. Disagree. (Davies deposition, pp. 23-26, 34-35)

73. Agree.

74. Agree.

75. Agree.

76. Agree.

77. Agree.

78. Agree.

79. Agree.

80. Disagree. (Davies deposition, pp. 39, 47)

81. Agree.

82. Agree.

83. This paragraph seems to be a nonsequitur, and in particular subparagraph (iii), and therefore the plaintiffs are unable to respond.

84. Agree.

85. Agree that she made that statement; however she testified further as well, as is set forth hereinafter.

86. Agree.

87. Disagree. (Davies deposition, p. 71)

88. Agree that she testified concerning this matter. Her testimony concerning emotional distress, however, expressly related to the combination of all facts and not to one discrete fact. (Id. p. 70)

89. Agree that she testified concerning this matter. Her testimony concerning emotional distress, however, expressly related to the combination of all facts and not to one discrete fact. (Ibid.)

90. Agree.

91. Agree.

92. Agree.

## II    PLAINTIFFS' STATEMENT OF MATERIAL FACTS

1. The plaintiff Snyder resides in both Connecticut and Arizona. (Snyder Deposition, p. 33)

2. Plaintiff Snyder was in Naugatuck from October to December, 2001, and from June to November, 2002. (Id. pp. 34-35)

3. During all of plaintiffs' interactions with the two defendants, both defendants were in uniform and acting in their capacities as police officers and not as private persons. (Id. pp. 36-37)

4. On an early evening in October or November of 2001, the plaintiff Snyder was standing in front of her building at 4 Scott Street in Naugatuck speaking with a prospective tenant of an apartment she had for rent in that building. The defendants pulled up in a police cruiser. They ordered her: "Get off this street now or it's gonna get ugly." Plaintiff Snyder was terrified. She asked why she had to get off the street, but the defendants simply repeated their

order.  (Id. pp. 39-43, 94-95)

5.  As a result, plaintiff was not able to rent the apartment to that prospective tenant.  (Id. pp. 46-47)

6.  In the summer of 2001, the plaintiff Snyder had a tenant at her building at 8 Scott Street who, contrary to the terms of her lease and in violation of a town ordinance, kept three dogs which she was allowing to roam unleashed.  The plaintiff reported her to the Naugatuck dog warden.  Defendant Pugliese, learning of this, came over to the property and began yelling at Snyder and berating her for calling the dog warden.  (Id. pp. 70-75)

7.  On another occasion, between July and September of 2001, the plaintiff was at home in her kitchen when defendant Pugliese simply barged into her house without knocking and began yelling at her about one of her tenants.  The tenant was behind in her rent and the plaintiff was threatening eviction proceedings.  Pugliese ordered the plaintiff to have no further contact with the tenant.  Pugliese remained in the plaintiff's kitchen for approximately 15 minutes on that occasion.  (Id. pp. 76-82)

8.  The defendants, either singly or together, came to the property of plaintiff Snyder so many times she can't even remember all of them.  (Id. p. 181)

9.  One specific incident which plaintiff Snyder does remember is "the night of the trash toss" described in her complaint.  (Id. p. 185)

10.  On that occasion, November 26, 2001, the defendants knew that

plaintiff Snyder had a legal right to remove trash from the property but falsely accused her of violating the rights of her tenant by doing so and placing the trash in a trash bag.  The defendants ordered her to return the bag of trash to Lepeska.  She showed the defendants that the bag contained trash, including an oil can and other "nasty stuff" but the defendants ordered it returned to him anyway, making it clear to the plaintiffs that they would be arrested if they did not do so.  (Id. pp. 190-94, 204)

      11.  On that occasion, the plaintiff Snyder explained to the defendants that a court order had prohibited Lepeska from having any contact with her.  Bosco, speaking in front of Pugliese, responded: "I don't care about that.  That's between you and a prosecutor."  Thus, the law was enforced unequally as between plaintiff Snyder and Mr. Lepeska.  (Id. p. 193)

      12.  The plaintiffs had in fact picked up the trash from the public area immediately adjacent to the street in front of the building and placed it in the bag.  (Id. p. 195, 203)

      13.  The plaintiffs then had placed the bag of trash in a garbage pail.  (Id. pp. 195-97)

      14.  The defendants walked behind plaintiff Davies as she, under their orders, took the bag from the pail and walked with it over to Mr. Lepeska, who then began screaming.  (Id. pp. 199-202)

      15.  Lepeska hurled the bag of trash into the air and it made a noise as it

hit the ground near plaintiff Davies.  (Id. p. 205)

16.  When the plaintiffs from time to time requested police assistance, they were told to stay off their own property and that if they ever called the police again they would be arrested for doing so.  This was terrifying to the plaintiffs, because crimes were being committed by tenants against them and the defendants and other officers refused to protect them.  (Id. pp. 209-10)

17.  For example, plaintiff Snyder learned that Lepeska was using her name for identity theft.  She sought police protection but nobody would return her call.  (Id. p. 210)

18.  While the defendants were not involved in all such incidents, there were several times when plaintiff Snyder disclosed to the specific defendants in this case that crimes were being committed against her and the defendants refused to investigate or provide protection.  (Id. p. 211)

19.  On one occasion three of her tenants threatened to physically assault plaintiff Snyder and break her nose.  When she complained to defendant Bosco, he refused to do anything about it.  (Id. p. 212)

20.  The plaintiff Davies is nicknamed "Giselle" and currently is a college student in California.  (Davies deposition, pp. 5-6) From August of 2001 through June of 2002, she resided in Naugatuck on the property of her aunt, plaintiff Snyder.  (Id. pp. 6-8)

21.  In the spring of 2002, Lepeska was evicted from his apartment by

plaintiff Snyder.  Defendant Bosco, at his request, accompanied him on a "walk through" of the premises to document its condition when he left.  When plaintiff Davies requested that an officer accompany her on a "walk through" of the same apartment to document its condition and provide her with security after Lepeska's eviction, however, she was told that the Naugatuck police do not do that and she would have to go unaccompanied.  (Id. pp. 15-16)

22. In April of 2002, plaintiff Davies delivered a written communication from plaintiff Snyder to one of the tenants, and placed it in her mail box.  Defendant Bosco thereafter telephoned her and instructed her not to go near the tenant.  (Id. pp. 17-18)

23. Plaintiff Davies was living at 4 Scott Street, Naugatuck, at the time of the November 26 incident.  The incident occurred around 5:00 p.m.  The plaintiffs were cleaning up the property, cleaning up cigarette butts, trash, etc, as a standard maintenance procedure on the property.  Plaintiff Snyder owns the property and Mr. Lepeska was a tenant there.  The plaintiffs had been ordered by a zoning official of the town to complete a cleanup of the premises that day.  (Id. pp. 23-26)

24. The plaintiffs placed the larger trash items in plaintiff Snyder's garage and the smaller trash items into a large glossy white garbage bag which they then placed in a trash can between their properties at 8 Scott Street and 4 Scott Street.  (Id. pp. 26-29)

25. When filled, the bag contained leaves, an empty milk carton, a plastic container with liquid, candy wrappers, and other trash items. (Id. p. 30)

26. Defendants Bosco and Pugliese arrived. (Id. p. 33)

27. The defendants demanded to know what the plaintiffs were doing. The plaintiffs responded that they had a zoning order to remove trash and that they were doing exactly that. Plaintiff Davies offered to show them the order. Defendants stated that Mr. Lepeska had called and claimed that the plaintiffs "took his bag of mulch, and they proceeded to say if we do not return the bag of mulch we will...be arrested for grand larceny." (Id. pp. 34-35)

28. Plaintiff Snyder explained that "Lepeska was under a no-contact order so he could not come into contact" with her and that she and Davies were afraid of Lepeska, who was angry and yelling. That order had been issued by the Superior Court in Waterbury. (Id. p. 35)

29. As this conversation progressed, Lepeska could be heard yelling and screaming at the plaintiffs. (Id. p. 39)

30. Plaintiff Snyder "was getting very emotional. She didn't want to go to Lepeska." (Id. p. 40)

31. Plaintiff Davies, under instructions from the defendants, carried the bag of trash over to Lepeska with the two defendants trailing behind her. (Id. p. 41)

32. Plaintiff Davies set the bag down near Lepeska. Lepeska picked it

up, looked at it, and threw the bag at the plaintiff Davies, who had to duck to avoid being hit by it.  Had she not ducked, it would have hit her.  The defendants were less than 20 feet behind her when that happened.  They backed away and did nothing.  (Id. pp. 42-44)

33.  As these events were taking place, Lepeska in the presence of the defendants was shaking his fist and pointing his finger at the plaintiffs.  Also in the presence of the defendants, Lepeska, screaming,  threatened to blow up the plaintiffs' house.  (Id. p. 47)

34.  Thereafter, from November 2001 through May 2002, the defendants and other Naugatuck officers treated the plaintiffs continuously in a manner less favorable than that in which they treated the plaintiff Snyder's five tenants, John Lepeska, Cyrilla Stoll, Joanne Warren, Theresa Kiker and John Desmond.  (Id. pp. 50-51)

35.  The officers involved in the disparate treatment were Bosco, Pugliese, Foley, Scully and Comerado.  (Id. p. 53)

36.  Whenever there was a dispute with one of the tenants, the officers always would favor the tenant over the plaintiffs.  (Id. p. 65)

37.  Plaintiff Davies has suffered stress, inability to concentrate and loss of sleep as a result of the disparate treatment to which she has been subjected.  (Id. p. 70)

38.  Plaintiff Davies, who had been working as the property manager for

plaintiff Snyder's properties, felt that she and plaintiff Snyder were severely restricted in their movements as a result of the defendants' actions. "I was essentially barred from walking on the property. I was told by officers stay away from this house; stay away from that house; stay away from this person. I felt like I was under house arrest." (Id. p. 71)

        THE PLAINTIFFS

BY_____
        JOHN R. WILLIAMS (ct00215)
        Williams and Pattis, LLC
        51 Elm Street, Suite 409
        New Haven, CT 06510
        Telephone: 203.562.9931
        Fax: 203.776.9494
        E-Mail: jrw@johnrwilliams.com
        Plaintiffs' Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, a copy hereof was mailed to James P. Mooney, Esq., 2452 Black Rock Turnpike, Fairfield, CT 06432.

_____
JOHN R. WILLIAMS